UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

OXFORD HOUSE, INC., OXFORD HOUSE          **REPORT,**
OF WNY, LLC, 29 JUNIPER, LLC,              **RECOMMENDATION and**
37 VINE, LLC, DAVID JOHNSON,              **ORDER**


                                          11-CV-00439(S)(M)

                        Plaintiffs,

v.

CITY OF LOCKPORT, NEW YORK
and YON J. HAMMOND,

                        Defendants.
_____


## INTRODUCTION

       This case has been referred to me by Hon. William M. Skretny for supervision of

pretrial proceedings, including preparation of a Report and Recommendation on dispositive

motions [29].[1]  Pursuant to Fed. R. Civ. P. ("Rules") 12(b)(1) and (b)(6), defendant City of

Lockport, New York ("Lockport") has moved [26] to dismiss the plaintiffs' First Amended

Complaint [24], and plaintiffs have cross-moved to strike portions of Lockport's motion to

dismiss [35]. Oral argument was held on June 26, 2012 [42].

       For the following reasons, I order that plaintiffs' motion to strike be granted in

part and denied in part, and I recommend that Lockport's motion to dismiss be granted in part

and denied in part.

---

     [1]      Bracketed references are to CM/ECF docket entries.

**BACKGROUND**

Plaintiffs Oxford House, Inc. ("OHI") and Oxford Houses of WNY, LLC ("OH-WNY") assist in the "establishment of affordable housing and supports to individuals with disabilities including those who are recovering from substance abuse and/or alcoholism". First Amended Complaint [24], ¶¶4-5. OH-WNY serves as property manager of 29 Juniper Street and 37 Vine Street in Lockport, and its residents are in recovery from alcoholism and substance abuse (id., ¶5). Plaintiff David Johnson is "a member and manager" of OH-WNY (id., ¶8).

**29 Juniper Street**

David Johnson purchased 29 Juniper Street, a three-story, two-family dwelling constructed in 1900, from Thomas Beatty on or about January 25, 2009 (id., ¶¶20, 22). Prior to the purchase, the residence was "occupied by unrelated, non-disabled tenants on the first, second and third floors" (id., ¶22). At the time Mr. Beatty purchased 29 Juniper Street "in the early 1980s", it was advertised as a two- family residence with a finished third floor (id., ¶23). Although Lockport condcuted several  inspections by the city of 29 Juniper Street while it was owned by Mr. Beatty, he was neither cited for nor informed that his use of the third floor was in violation of the New York State Building Code (id., ¶¶25-28).

In May 2009, Mr. Johnson began taking steps to accept residents at 29 Juniper Street who were in recovery from alcohol and substance abuse addictions, and in October 2009 he submitted an application  with OHI to obtain a conditional charter (id., ¶¶30-31). On or about October 15, 2009, Lockport's building inspector, Clinton Dimmick, inspected 29 Juniper Street

and noted several violations of Lockport's property maintenance code, whereupon he swore out a criminal information (id., ¶¶34, 35).  Mr. Johnson began repairs to correct the violations and to make other improvements (id., ¶¶36, 38).

On or about June 30, 2010, Mr. Dimmick obtained a search warrant for the third floor of 29 Juniper Street (id., ¶39), which was executed on July 2, 2009 by breaking a window to effect entry (id., ¶42).  As a result of this inspection, Mr.  Johnson was issued a criminal appearance ticket for maintaining an unsafe structure in violation of the New York State Property Maintenance Code ("PMC")[2] (id., ¶44).  Although other dwellings near 29 Juniper Street outwardly appeared to use their third floors as living areas, no search warrants to inspect, criminal complaints or other enforcement actions have been taken with respect to those dwellings (id., ¶¶40, 45).

Mr. Johnson informed the city that, based upon his review of tax assessment records, it appeared that Lockport was aware of the finished third floor at 29 Juniper Street  prior to the 1950s, and that an inspection conducted by the city in 1991 resulted in the square footage of the third floor being reduced (id., ¶51). At a September 2, 2010 meeting with Mr Dimmick and his supervisor, Jason Dool, Mr. Johnson demonstrated to them that the third-floor bedroom was part of the original construction of the dwelling, but Mr. Dool stated that "he did not care about the original construction and it would be easier if Mr. Johnson stopped using the house as an Oxford House and if he just moved out the residents" (id., ¶47).  Mr. Johnson was also informed that he would have to install a sprinkler system and specialized fire escape (id., ¶48). However, according to plaintiffs, the third floor is in compliance with the Residential Code of the

---

[2]        The PMC is located at 19 N.Y.C.R.R. Part 1226.

State of New York ("RCSNY"),[3] Appendix J, Sections AJ102.1 and AJ102.2,  and is not

required to have any other means of egress or a sprinkler system (id., ¶49).

Plaintiffs also allege that "Mr. Dimmick changed the use of 26 Juniper Street from

a single family use to a non single family use group" (id., ¶35). Consequently, Mr. Johnson was

informed that "the occupancy was limited to eight persons or less since the premises was

considered a two-family house" (id., ¶43).

On or about October 11, 2010 Steven Polin, Esq., an attorney for OHI, sent a

letter to Mr. Dimmick requesting a reasonable accommodation to allow the use of the third floor

as a grandfathered use and to treat it as a single family use (id., ¶52).  However, no response to

this request was received (id., ¶53).  A second request for a reasonable accommodation for 29

Juniper Street was sent by plaintiffs' counsel on September 22, 2012 (id., ¶54), five days before

the First Amended Complaint was filed, requesting that the city "treat the use of the finished

third floor . . . as a legal non-conforming use, and grandfather the use of the third floor as

compliant with all applicable building and safety code as it had done during the inspection in the

early 1990's" (id.).

### 37 Vine Street

On or about September 22, 2010, 37 Vine Street was purchased by 37 Vine, LLC

for the purpose of providing housing to recovering alcoholics and substance abusers (id., ¶66).  In

furtherance of this goal, the residents of 37 Vine Street applied to OHI for a conditional charter

(id., ¶67).

---

[3]        The RCSNY  is located at 19 NYCRR Part 1220.

Defendant Yon Hammond is the owner of 67 Juniper Street, which is adjacent to the driveway of 37 Vine Street (id., ¶65).[4]  After learning that 37 Vine Street was occupied by recovering alcoholics and substance abusers, he drilled holes in the middle of the driveway of 37 Vine Street and placed metal poles into the holes, causing Mr. Johnson to accidentally drive over the poles (id., ¶¶69, 70).  A similar incident occurred on November 1, 2010, prompting Mr. Johnson to schedule a meeting with Messrs. Dool and Dimmick at which they "questioned Mr. Johnson as to why he was opening more Oxford Houses in Lockport"; when Mr. Johnson questioned the "propriety of Mr. Hammond placing poles in the common driveway, Mr. Dool painted a pink line down the middle of the driveway and told Mr. Johnson that line was the property line" (id., ¶72).

This prompted 37 Vine, LLC  to commence a civil suit against Mr. Hammond to establish adverse possession of the disputed portion of the driveway (id., ¶73).  When Mr. Johnson learned that Mr. Hammond had applied for a building permit to erect a fence down the middle of the driveway at 37 Vine Street, he advised Mr. Dool of the adverse possession suit, but was told that it was the position of the Building Department that Mr. Hammond  could erect a fence on the common driveway and that "he should look in other places for the Oxford Houses" (id., ¶76).  Plaintiffs allege that they "have been harassed by members of the City of Lockport Police Department through continuous writing of parking tickets of legally parked cars both on the street and in the driveway, and have been threatened with arrest and being jailed" (id.,  ¶¶77, 80).

---

[4]        Mr. Hammond has not moved to dismiss the First Amended Complaint.

Plaintiffs allege that Lockport has violated their rights under the Federal Fair

Housing Act ("FHA"), 42 U.S.C. §§3601, *et seq*. (<u>id</u>., Count I) and the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §§12132, *et seq*. (<u>id</u>., Count II). They also allege that Mr.

Hammond has violated their rights under the FHA, 42 U.S.C. §§3604(f)(1) and 3617 (<u>id</u>., Count

III).   Lockport has moved [26] to dismiss the First Amended Complaint on ripeness grounds and

for failure to state a claim.  Plaintiffs oppose this motion and have cross-moved [35] to strike

certain material offered by Lockport in support of its motion to dismiss.

## ANALYSIS

### A.      Motion to Strike

Lockport's motion to dismiss pursuant to Rules 12(b)(1) and (b)(6), it includes a

Memorandum of Law ([26-8] - [26-9]) and  the Declaration of Terry Rice, Esq. ([26-1]), which

attaches the First Amended Complaint ([26-2]), copies of third floor violations issued to other

properties ([26-3] - [26-5]), the cover page of the 2007 New York State Uniform Fire Prevention

and Building Code ([26-6]), and an October 17, 2011 letter from Mr. Dool, responding to Mr.

Polin's September 22, 2011 letter requesting a reasonable accommodation ([26-7]).

"Consideration of materials outside the complaint is not entirely foreclosed on a

12(b)(6) motion." <u>Faulkner v. Beer</u>,  463 F.3d 130, 134 (2d Cir. 2006). "When deciding a motion

to dismiss based on Rule 12(b)(6), the Court is entitled to consider the following: '(1) facts

alleged in the complaint and documents attached to it or incorporated in it by reference, (2)

documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated

by reference, (3) documents or information contained in [a] defendant's motion papers if plaintiff

has knowledge or possession of the material and relied on it in framing the complaint, (4) public

disclosure documents required by law to be, and that have been, filed with the Securities and

Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule

201 of the Federal Rules of Evidence.'" Castagna v. Luceno, 2011 WL 1584593, *5  (S.D.N.Y.

2011); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002).  Even if a

document falls within one of these categories, "it must be clear on the record that no dispute

exists regarding the authenticity or accuracy of the document . . . .  [and] that there exist no

material disputed issues of fact regarding the relevance of the document." Faulkner, 463 F.3d at

134.

       If evidence outside of these confines is offered in support of a motion to dismiss

pursuant to Rule 12(b)(6), the court may "exclude[ ] the extrinsic documents" or "convert the

motion to one for summary judgment and give the parties an opportunity to conduct appropriate

discovery and submit the additional supporting material contemplated by Rule 56". Chambers,

282 F.3d  at 154. "'Federal courts have complete discretion to determine whether or not to accept

the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6)

motion, and thus complete discretion in determining whether to convert the motion to one for

summary judgment; [t]his discretion generally will be exercised on the basis of the district court's

determination of whether or not the proffered material, and the resulting conversion from the

Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.'"

Hejmanowski v. Bykowicz,  2010 WL 161446, *2 (W.D.N.Y. 2010)(Arcara, J.).

       As Lockport notes, unlike a motion to dismiss pursuant to Rule 12(b)(6),

"[d]ocumentary and even affidavit evidence is permitted in considering a motion pursuant to

Rule 12(b)(1)." Lockport's Memorandum of Law [39], p. 2 n. 1. *See* Morrison v. National

Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) aff'd, 130 S.Ct. 2869 (2010) ("In

resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district

court may consider evidence outside the pleadings"); Kamen v. American Telephone &

Telegraph, Co., 791 F.2d 1006, 1011 (2d Cir. 1986) ("when . . . subject matter jurisdiction is

challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise").

Thus, unlike a motion under Rule 12(b)(6),  "a 12(b)(1) motion cannot be converted into a Rule

56 motion". Kamen, 791 F.2d  at 1011.

  In lieu of requesting that Lockport's motion be converted to a motion for

summary judgment, plaintiffs move to strike the Rice Declaration ([26-1]),[5] the third floor

violations issued to other properties ([26-3 - 26-5]), and the October 17, 2011 letter from Mr.

Dool ([26-7]).

### 1. The Rice Declaration

  Plaintiffs argue that the Rice Declaration "is nothing more than a memorandum of

law", which is "not based on Mr. Rice's personal knowledge", but "offers his 'legal opinion' as

to the facts presented in the First Amended Complaint . . . and his interpretation of the

Residential Code of New York State".  Plaintiffs' Motion to Strike [35], p. 5.

  I agree. "[E]vidence submitted outside the pleadings [must] be competent."

Kamen,  791 F.2d at 1011.  Thus, to the extent the Rice Declaration contains factual allegations

---

[5] The Wherefore Clause of plaintiffs' motion to strike ([35], p. 11) seeks to strike "Dkt. 26-9", which is a portion of Lockport's  Memorandum of Law.  I assume that this is a typographical error and was intended to reference the Rice Declaration ([26-1]).

which are not based upon Mr. Rice's personal knowledge,[6]  they will be stricken.  *See* <u>Sapp v.</u>

<u>F.D.I.C.</u>, 876 F.Supp. 249, 251 (D.Kan. 1995) ("affidavits in support of or opposing motions to

dismiss for lack of jurisdiction must comply with the requirements of Fed.R.Civ.P. 56(e), i.e.,

they must be based on personal knowledge, set forth such facts as would be admissible into

evidence, and show affirmatively that the affiant is competent to testify to the matters stated").

Likewise, any legal arguments in the Rice Declaration will be disregarded.  *See* Loc. R. Civ. P.

7(a)(3) ("An affidavit must not contain legal arguments").


### 2.  Other Third-Floor Violations

Lockport relies on third-floor violations issued to other properties in seeking to

dismiss the First Amended Complaint for facial insufficiency (Lockport's Memorandum of Law

[26-9], pp. 12-13), rather than in support of its ripeness challenge.  Plaintiffs argue that these

documents "are not integral to the complaint" since "[t]his is not an action for selective

enforcement of the RCNYS". Plaintiffs' motion to strike [35], p. 7. This argument is difficult to

reconcile with the allegations of the First Amended Complaint.[7]  A document is considered  to be

"integral" to the complaint where "the  complaint 'relies heavily upon its terms and effect'"

---

[6]      *See, e.g.*, Rice Declaration [26-1], ¶26 ("Contrary to the implications of the complaint, the City has no complaint with and has not issued any violation notices with respect to the zoning use of the property").

[7]      *See, e.g.*, First Amended Complaint [24], ¶45 ("Upon information and belief, neither Mr. Dimmick nor any other Lockport City official has sought a search warrant to inspect those dwellings which appear to be using the third premises [*sic*] as a living area; nor have they issued criminal complaints, nor have they taken any other action to enforce the City's building and property maintenance code against the owners  of these dwellings"); ¶86 ("The City of Lockport is treating the residents of the aforementioned dwellings in a discriminatory fashion, and is imposing far more stringent fire, zoning, building, property maintenance and land use requirements on this group. . . than it imposes upon . . . other groups of unrelated non-disabled persons").

Chambers, 282 F.3d at 153 ("a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion" (emphasis added)), and it is evident that these other third-floor violations, which may undermine their claim, were not relied upon by plaintiffs in drafting the First Amended Complaint.

Plaintiffs also dispute the authenticity of the violations and argue that they "are not the category of documents that the Court can take judicial notice of in accordance with Fed. R. Evid. 201". Plaintiffs' Motion [35], p. 10. Even if I were to take judicial notice of these documents, it would be only to the extent that they demonstrate that other properties in the city were subject to illegal third floor occupancy violations, but not that these individuals were similarly situated to plaintiffs. Without the factual underpinnings for these violations to determine whether they are similar to the circumstances alleged by plaintiffs, they add little to my adjudication of the motion to dismiss. Therefore, these documents are stricken.

**3. October 17, 2011 letter from Mr. Dool**

Plaintiffs argue that this letter should be "stricken for the same reasons stated for striking the [Rice Declaration] and for striking [the third-floor violations]". Plaintiffs' Motion [35], p. 10. The city responds that this letter "is a public record and additionally was referred to by Plaintiffs". Lockport's Memorandum of Law [39], p. 3.

Despite plaintiffs' current challenges to this document, they themselves rely upon it in addressing the subject matter jurisdiction issue. *See* Plaintiffs' Memorandum of Law [34], pp. 21-23. Therefore, I order that it not be stricken.

**B.      Lockport's Motion to Dismiss**

"Both the [FHA] and the ADA prohibit governmental entities from implementing or enforcing housing policies in a discriminatory manner against persons with disabilities." Tsombanidis v. West Haven Fire Department, 352 F.3d 565, 573 (2d Cir. 2003). "[D]ue to their similarities, [these statutes] can be analyzed 'in tandem.'" Smith v. NYCHA, 410 Fed.Appx. 404, 406 (2d Cir. 2011)(Summary Order). These "statutes require 'that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities.'" Id.  Generally, "[t]o establish discrimination under either the [FHA] or the ADA, plaintiffs have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." Tsombanidis, 352 F.3d at 573.  See Smith, 410 Fed.Appx. at 406.

**1.      29 Juniper Street**

**a.      Are Plaintiffs' Claims Ripe?**

The city argues that plaintiffs' ADA and FHA claims are not ripe.  Lockport's Memorandum of Law [26-9], Point II.  While plaintiffs repeatedly argue that the city's "memorandum in support of the motion to dismiss . . . only addresses dismissal pursuant to Rule 12(b)(6)" (plaintiffs' opposition [34], p. 1 n.1; plaintiffs' motion to strike [35], p. 1 n.1), as discussed above "[r]ipeness is a question of subject matter jurisdiction".  Rivendell Winery, LLC v. Town of New Paltz, 725 F.Supp.2d 311, 317 (N.D.N.Y. 2010)(citing Vandor, Inc. v.

Militello, 301 F.3d 37, 38 (2d Cir. 2002)); Murphy, 402 F.3d at 347.   Therefore, even where a

party does not expressly rely on the Rule, courts will construe a "ripeness objection as a motion

to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)". Sea Tow Services

International, Inc. v. Pontin,  472 F.Supp.2d 349, 356 n.3  (E.D.N.Y. 2007).


### i.        Reasonable Accommodation

Plaintiffs argue that since the Lockport did not provide a response to its

reasonable accommodation request before filing its motion to dismiss, their request was

constructively denied.  Plaintiffs' Opposition [34], p. 21.  I disagree. Plaintiffs cannot create a

constructive denial by requesting a reasonable accommodation by letter dated September 22,

2011, and then filing their First Amended Complaint merely five days later, on September 27,

2011.  *See* Scoggins v. Lee's Crossing Homeowners Association, 2011 WL 4578409, *8-9

(E.D.Va. 2011) ("The Scogginses' second request for an accommodation . . . came in September

2010, and even if the [the defendant's] e-mail of September 2010 asking for additional

information was not received by the Scogginses as they assert, it was nonetheless premature for

them to file suit on October 13, 2010.  Therefore, the Court finds that there was no constructive

denial of the Scogginses' requests for accommodations and this lawsuit was filed prematurely").

Mr. Dool responded on October 17, 2012, stating in relevant part:

"Unfortunately, I do not believe that I have the authority to grant
a 'reasonable accommodation' based upon the information that has
been provided . . . .  [T]he New York State Uniform Fire Prevention
and Building Code provides that 'No town, village, city . . . may waive,
modify or otherwise alter an provision of this code unless approved by
the State Fire Prevention and Building Code Council . . . .

Appendix J of the New York State Uniform Fire Prevention and Building Code is entitled "Existing Buildings and Structures." Section J102.1 provides that 'The <u>legal occupancy</u> of any building existing on the date of adoption of this code shall be permitted to continue without change. . . .' (emphasis added).  Section J102.1.1 provides that 'Additions, alterations or repairs to any structure shall conform to that required by this code, unless otherwise stated.' Section J202 defines the term 'addition' to mean 'An extension or increase in floor area, number of stories, or height of a building." Section J202 defines the term 'alteration' to mean 'Any construction or renovation to an existing structure other than repair or addition.  Alterations are classified as Level 1 and Level 2.' Pursuant to §J304.1 'Level 2 alterations include the reconfiguration of space. . . .'  Pursuant to J304.2 'Level 2 alterations shall comply with the provisions of Section AJ5 for Level 1 alterations as well as the provisions of Section AJ6.'  Among the Level 2 Alteration requirements, pursuant to §J604.3, 'Automatic Sprinkler Systems' for Level 2 Alterations:

A third story above grade may be created in an existing attic without the installation of a sprinkler system throughout the entire dwelling, provided all of the following conditions are met:

1.      The building was legally occupied before January 1, 1984.

2.      The finished space and its means of egress to the exterior are equipped with a limited area sprinkler system . . . .

3.      The finished space is provided with . . .  A second exit stair . . . or  . . . An emergency escape and rescue opening . . . .

4.      The entire dwelling is equipped with smoke alarms . . . .

The owner has provided a letter to the effect that the property included a 'finished third floor . . .' when he purchased the property 'in the early 1980's.'  However, permits necessary to convert the third floor to habitable dwelling space were never obtained.  Consequently, the space was never legally created.  As a result, it is subject to the requirements existing at the present time. Moreover, even if the third floor had legally been converted in the early 1980's, it would have been subject to the building code then in existence which would have required sprinkler's [*sic*] and/or a fire escape of secondary means of egress . . . .

-13-

> If the owner is unwilling to comply with the applicable
> requirements, I suggest that he utilize the appeals or variance
> procedure provided by the New York State Uniform Fire
> Prevention and Building Code to obtain relief" ([26-7]).

Plaintiffs concede that if Mr. Dool's statement that the "the State Board is the only authority to grant the requested accommodation" is true, "then [they] would act accordingly". Plaintiffs' Opposition [34], p. 21. However, they do not agree that Mr. Dool lacks the authority to grant their reasonable accommodation request, since they were not seeking a variance from the third floor requirements of the New York State Uniform Fire Prevention and Building Code Act, NY Executive Law Article 18 ("Fire Code"),[8] but rather are "seeking continued treatment from the City as either a legal use, or a legal non-conforming use, and/or a consistent application of Appendix J, Section AJ102.1 and AJ102.2." (id., pp. 22-23).

"To prevail on a reasonable accommodation claim, plaintiffs must first provide the governmental entity an opportunity to accommodate them through the entity's established procedures used to adjust the neutral policy in question." Tsombanidis, 352 F.3d at 578 -579. "A governmental entity must know what a plaintiff seeks prior to incurring liability for failing to affirmatively grant a reasonable accommodation. It may be that once the governmental entity denies such an accommodation, neither the [FHA] nor the ADA require a plaintiff to exhaust the state or local administrative procedures . . . . But a plaintiff must first use the procedures available to notify the governmental entity that it seeks an exception or variance from the facially neutral laws when pursuing a reasonable accommodation claim." Id. at 579.

---

[8]    The Fire Code permits a municipality to establish and enforce its own building regulations as long as those regulations do not " supersede, void, repeal or make more or less restrictive" any of the provisions of the Fire Code or its accompanying regulations. NY Exec. Law §379(3).

Plaintiffs have notified Lockport of their reasonable accommodation request, and the city has constructively denied that request on the grounds that it lacks jurisdiction to grant the requested relief.  While the parties dispute whether Lockport has the authority to grant the request, this is an issue that goes to the merits of plaintiffs' reasonable accommodation claim, not its ripeness.[9] Furthermore, although procedures may exist on the State level to address this request, plaintiffs have not brought a reasonable accommodation claim against the State.  AKI Family Ltd. Partnership v. City of San Marcos, 2007 WL 628044, *3 (S.D.Cal. 2007) ("district courts have also dismissed FHA claims as unripe when the plaintiff has failed to use available procedures provided for by local law that would allow the plaintiff to obtain relief from zoning restrictions" (emphasis added)).

Therefore, I recommend that Lockport's motion to dismiss as unripe plaintiffs' reasonable accommodation claim arising from their request to treat the third floor of 29 Juniper Street as a legal non-conforming use or as  grandfathered from the applicable building and safety codes be denied.

Although the First Amended Complaint alleges that OHI sent a letter to Mr. Dimmick in October 2010 requesting a reasonable accommodation ([24], ¶52) and then a second

---

[9]     I recognize that in Tsombanidis, the defendant fire district argued before the district court that the plaintiffs' claim was not ripe, inter alia, because  it did not have the authority to waive the state Fire Code, and the plaintiffs had not requested an exemption or variance from the State Fire Marshal.  129 F.Supp.2d 156 161 n. 27 (D.Conn. 2001).  Under these circumstances, the district  court concluded that "[u]ntil it does, . . .the Fire District can[not] authorize the current use of the property nor can they provide plaintiffs with the 'reasonable accommodation' which they seek." Id. at 161.  However, it was "unrefuted" that the defendants lacked  authority to grant the accommodations sought. Id. Moreover, on appeal, the Second Circuit affirmed the District Court's ripeness decision, but relied on the fact that Oxford House "stated in its original letter it was not seeking an accommodation."  352 F.3d at 579 (emphasis added).

-15-

letter on behalf of all plaintiffs on September 22, 2011 (id., ¶54), plaintiffs concede that it is only

"the most recent request . . . that [*sic*] at issue."  Plaintiffs' Opposition [34], p. 20.  Unlike the

initial reasonable accommodation request, it is not alleged that the September 22, 2011 letter

requested that 29 Juniper Street be treated as a single-family dwelling.  Therefore, to the extent

plaintiffs are basing their reasonable accommodation claims on the failure of the city to treat or

classify 29 Juniper Street as a single-family use, I recommend that these claims be dismissed as

unripe pursuant to Rule 12(b)(1).[10]


### ii.       Plaintiffs' Remaining Claims

Plaintiffs argue that "[t]he Defendant's motion must fail because the complaint

alleges that the Defendant has intentionally discriminated against the Plaintiffs on the basis of

disability; that the enforcement and interpretation made by the City's Building Official of the

Residential Code of New York State and the Property Maintenance Code has a disparate impact

on the Plaintiffs; and/or that it has retaliated against the Plaintiffs because they have asserted

their rights under the [FHA] and the ADA.  Any of these three theories of discrimination do not

require exhaustion of administrative remedies, thus making these claims ripe for adjudication."

Plaintiffs' Opposition [34], p. 17.  Lockport responds, without citation to specific case authority,

that "[t]he case law consistently concludes that ripeness applies to reasonable accommodation

claims and generally that the doctrine also applies to disparate treatment claims." Lockport's

Reply Memorandum of Law [40], p. 4.

---

[10]       This may have little significance as the city argues that "the use of the structure is classified as a single-family dwelling pursuant to the Zoning Law and as a single-family home for purposes of the New York State Uniform Fire Prevention and Building Code." Rice Declaration [26-1], ¶8 n. 2.

"While 'most [FHA] reasonable accommodations claims must first be presented to local land use boards,' claims of discriminatory intent or discriminatory impact are ripe even where approvals have not been sought." Torres v. Franklin Township, 2011 WL 6779596, *5 (D.N.J. 2011) (quoting Lapid–Laurel, LLC v. Zoning Board  of Adjustment of Township of Scotch Plains, 284 F.3d 442, 452–54 (3d Cir.2003)). See United States v. Village of Palatine, Illinois, 37 F.3d 1230, 1233, n. 3  (7th Cir. 1994) ("We note that if plaintiff's claim were of discriminatory intent, rather than failure to make a reasonable accommodation, this claim might well be presently ripe even though Oxford House-Mallard has not sought a special use approval"). Compare with Oxford House, Inc. v. City of Virginia Beach, Va., 825 F.Supp. 1251, 1261-1262 (E.D.Va. 1993) ("the zoning process is not remedial in nature because, unless and until plaintiffs are denied a conditional use permit or the required conditions are established, the City has not fully applied its zoning scheme to them and, consequently, plaintiffs' claims of discrimination, based on theories of discriminatory effect or failure to make reasonable accommodation, are not ripe for adjudication and are dismissed").

Because I conclude that these claims are also ripe, I recommend that this aspect of Lockport's motion be denied.

### b.       Do Plaintiffs' Claims Fail to State a Cause of Action?

#### i.       Intentional Discrimination (Disparate Treatment)

Lockport argues that plaintiffs have failed to establish "a fact-based  prima facie claim", and that even if they had alleged a prima facie case of disparate treatment, it has provided a legitimate nondiscriminatory reason for its conduct. Lockport's Memorandum of Law [26-9],

pp.11-14, 17-18. In response, plaintiffs argue that they have alleged "plausible facts that the City has engaged in discriminatory conduct". Plaintiffs' Opposition [34], p. 17.

"To establish intentional discrimination, plaintiffs must prove that a motivating factor behind the City's [conduct] was the residents' status as recovering drug addicts and alcoholics." Tsombanidis,  352 F.3d  at 579 -580. "[C]laims of intentional discrimination under the FHA [and] the ADA [are analyzed] under the familiar McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting analysis". Regional Economic Community Action Program, Inc. v. City of Middletown,  294 F.3d 35, 48-49 (2d Cir.), cert. denied, 537 U.S. 813 (2002).  "Under this scheme, the plaintiffs must first establish a prima facie case of discrimination", which requires the plaintiffs to "present evidence that 'animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive.'" Id. at 49. "Plaintiff's initial burden of proof to demonstrate a prima facie case of discrimination is minimal." Fair Housing Justice Center, Inc. v. Edgewater Park Owners Co-op., Inc.,  2012 WL 762323, *7 (S.D.N.Y. 2012).

"Factors to be considered in evaluating a claim of intentional discrimination include: (1) the discriminatory impact of the governmental decision; (2) the decision's historical background; (3) the specific sequence of events leading up to the challenged decision; (4) departures from the normal procedural sequences; and (5) departures from normal substantive criteria." Tsombanidis, 352 F.3d at 580 (citing Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266-68 (1977)). See Valley Housing LP v. City of Derby,  802 F.Supp.2d 359, 386 (D.Conn. 2011) ("Plaintiffs presented a prima facie case of

discrimination based on the *Village of Arlington Heights* factors"). "These factors are not

exclusive or mandatory but merely a framework within which a court conducts its analysis." [11]

"Once plaintiffs make out a prima facie case, then defendants must provide a

legitimate, nondiscriminatory reason for their decision . . . . Finally, the burden returns to

plaintiffs to prove that they were intentionally discriminated against on a prohibited ground,

which may occur via a substantial showing that defendants' proffered explanation was false or

pretextual." Quad Enterprises Co., LLC v. Town of Southold, 369 Fed.Appx. 202, 207, 2010 WL

807946, *3 (2d Cir. 2010)(Summary Order).

Lockport argues that even if its determined that its actions were incorrect, "it

cannot credibly be asserted that they were taken for a discriminatory purpose." Lockport's

Memorandum of Law [26-9], p. 11  n. 5.  I disagree.  The allegations of the First Amended

Complaint, considered in their totality and assumed to be true for purposes of this motion,

plausibly demonstrate that discriminatory intent was a motivating factor behind the city's

conduct. These allegations establish that 29 Juniper Street was originally constructed in 1900

with a third floor living area and that despite prior inspections of the third floor by the city, it was

not until Mr. Johnson purchased 29 Juniper Street  for use as an Oxford House that the city found

the use of the third floor be a violation. First Amended Complaint [24], ¶¶21, 28, 44, 47, 51.

Although the third floor construction was original to the house and a legal non-conforming use

---

[11]     By contrast, the city, relying  on Gamble v. City of Escondido, 104 F.3d 300, 305 (9th
Cir. 1997), argues that the following factors apply to plaintiffs' prima facie burden: 1)  whether they
were entitled to receive the requested approval or a dispensation from enforcement, 2) whether the
approval was denied despite plaintiffs being qualified, and 3) whether other approvals were granted
during the same time period for similarly situated individuals. Lockport's Memorandum of Law [26-9],
pp. 9, 11-13. Even applying these factors, I would deny the city's motion based upon the allegations of
the First Amended Complaint.

grandfathered from the requirements of the RCSNY, the city is requiring that the third floor be brought into compliance with the applicable code requirements (id., ¶¶48, 49).  However, it has not taken similar enforcement action against other property owners who appear to be using their third floors as a living areas (id., ¶¶45, 86).

Lockport concedes that the third floor of 29 Juniper Street may be grandfathered from the application of the Fire Code if it predated its enactment. Lockport's Memorandum of Law [26-9], p. 15 ("in the absence of proof that the third floor use predated the New York State Uniform Fire Prevention and Building Code or its predecessors, the City has no authority to permit the third floor occupancy").  The First Amended Complaint sufficiently alleges that the construction of the third floor as a living area  predated the Fire Code, thereby arguably establishing the falsity of the city's proffered non-discriminatory explanation for its conduct.

Further evidencing a discriminatory intent, Mr. Dool  has stated that "he did not care about the original construction and it would be easier if Mr. Johnson stopped using the house as an Oxford House and if he just moved out the residents"(id., ¶47).  Likewise, when Mr. Johnson called the city's Building Department about 37 Vine Street, he was told that "he should look in other places for the Oxford Houses" (id., ¶76).

Plaintiffs also allege that public animus about locating Oxford House in the city (id., ¶¶58, 64) may be motivating the city's conduct. See Tsombanidis,  352 F.3d at 580 (affirming the district court's finding of intentional discrimination, where "[a]mong other things, the district court noted the history of hostility of neighborhood residents to [the Oxford House] and their pressure on the Mayor and other city officials. Evidence supports the court's finding that

this hostility motivated the City in initiating and continuing its enforcement efforts").

Therefore, I recommend that this aspect of the city's motion be denied.


### ii.     Disparate Impact

"'A disparate impact analysis examines a facially-neutral policy or practice, such as a . . . zoning law, for its differential impact or effect on a particular group.'" Regional Economic Community Action Program, Inc., 294 F.3d at 52. "To establish a prima facie case under this theory, the plaintiff must show: '(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.'" Id. at 52-53. "A plaintiff need not show the defendant's action was based on any discriminatory intent." Tsombanidis, 352 F.3d at 575.

Lockport argues "the complaint is devoid of any indication or fact-based allegation to even imply that a disparate impact claim is attempted to be asserted". Lockport's Memorandum of Law [26-9], p. 18. Plaintiffs respond that "[t]he RCNYS and the PMC are both subject to scrutiny under the [FHA] and the ADA as to whether enforcement of them has a disparate impact upon groups of disabled persons." Plaintiffs' Opposition [34], pp. 12-13.[12]

While allegations tracking plaintiffs' argument may suffice to state a disparate impact claim, such a claim is not manifest from the factual allegations or claims of the First Amended Complaint, which instead center on intentional discrimination premised on the

---

[12]     Even if plaintiffs had alleged a disparate impact claim based upon the enforcement of the PMC and RCNYS, it is unclear whether such a claim could be brought against the city as it did not enact these regulations.

selective enforcement of these provisions, not on whether the neutral application of the RCNYS and PMC to properties functioning as Oxford Houses have a disproportionate impact on these properties. *See* <u>Regional Economic Community Action Program, Inc.</u>, 294 F.3d at 53 ("a handicapped person might challenge a zoning law that prohibits elevators in residential dwellings.  That neutral law might have a disproportionate impact on such a plaintiff and others with similar disabilities, depriving them of an equal opportunity to use and enjoy dwellings there. Here, by contrast, RECAP does not challenge a facially neutral policy or practice; it challenges one specific act: the denial of a special-use permit for the Formisano property.  No comparison of the act's disparate impact on different groups of people is possible.  RECAP therefore fails to allege a cognizable cause of action under a disparate impact theory"); <u>Attard v. City of New York</u>, 451 Fed.Appx. 21, 24, 2011 WL 6225249, *2 (2d Cir. 2011)(Summary Order), <u>cert. denied</u>, 2012 WL 609462 (2012) ("Because Attard failed to identify a facially neutral practice, she cannot establish a prima facie case of disparate impact"); <u>Tsombanidis</u>, 352 F.3d at 576 (a "facially neutral housing policy that prevents a handicapped person from living in a particular house . . . . is not sufficient for disparate impact purposes").

        Therefore, I recommend that this aspect of the city's motion be granted.

        **iii.**      **Reasonable Accommodation**

        "A municipality discriminates in violation of the FHA [and] the ADA . . . if it refuses to make changes to 'traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling.'" <u>Regional Economic Community Action Program, Inc.</u>, 294 F.3d at 53.  "A defendant must incur reasonable costs and take

modest, affirmative steps to accommodate the handicapped as long as the accommodations

sought do not pose an undue hardship or a substantial burden." Tsombanidis, 352 F.3d at 578.

Lockport argues that plaintiffs have not established that the requested

accommodation is necessary since "[t]he complaint is devoid of any allegations . . . that use of

the third floor of the 29 Juniper property is necessary in order for recovering substance abusers to

utilize the property for the recovery efforts". Lockport's Memorandum of Law [26-9], p. 24.

Plaintiffs respond that "[n]ecessity means that the residents must receive therapeutic benefit from

their addiction by living in a sober living setting such as Oxford House" Plaintiffs' Opposition

[34], p. 24 (*citing* Schwarz v. City of Treasure Island,  544 F.3d 1201 (11th Cir. 2008)).

The FHA prohibits " a refusal to make reasonable accommodations in rules,

policies, practices, or services, when such accommodations may be *necessary to afford such*

*person equal opportunity to use and enjoy a dwelling*" 42 U.S.C.A. § 3604(f)(3)(B)(emphasis

added).  However, to be considered "necessary", reasonable accommodations cannot go beyond

addressing the needs of the individual's handicap.  "If accommodations go beyond addressing

these needs and start addressing problems not caused by a person's handicap, then the

handicapped person would receive not an 'equal,' but rather a better opportunity to use and enjoy

a dwelling, a preference that the plain language of this statute cannot support". Schwarz,  544

F.3d at 1226 (citing cases). *See* Bryant Woods Inn, Inc. v. Howard County, Maryland, 124 F.3d

597, 604 (4th Cir. 1997) ("if the proposed accommodation provides no direct amelioration of a

disability's effect, it cannot be said to be 'necessary'").  Thus, "[i]n order to fulfill this element,

Plaintiffs need[ ] to provide evidence that 'the desired accommodation will affirmatively enhance

a disabled plaintiff's quality of life by ameliorating the effects of the disability.'" Quad

Enterprises Co., LLC, 69 Fed.Appx. at 207-208, 2010 WL 807946 at *3 (*quoting* Bronk v.
Ineichen, 54 F.3d 425, 429 (7th Cir.1995)).

      For example, in Bryant Woods, the zoning variance sought was to expand the
group home size from 8 to 15 persons. 124 F.3d at 605.  At the summary judgment stage, the
court concluded that "[t]he zoning variance that Bryant Woods Inn seeks is not aimed at
permitting handicapped persons to live in group homes in residential communities . . . [,] but at
*expanding* its group home size from 8 to 15 persons." Id. (emphasis in original). However,
"nothing in the record . . .  suggests that a group home of 15 residents, as opposed to one of 8, is
necessary to accommodate individuals with handicaps" since "the Inn has introduced no evidence
that group homes are not financially viable with eight residents" or that "expansion from 8 to 15
residents would be therapeutically meaningful". Id. *See* Quad Enterprises Co., LLC, 369
Fed.Appx. at 208, 2010 WL 807946 at *3 ("Plaintiffs have offered no evidence that the dense
multifamily aspect of its proposed development, the characteristic for which it requested
accommodation, bears a relationship to the handicapped-accessible nature of its units or will
ameliorate the effects of its residents' disability. Nor have they shown that development of
handicapped-accessible units is fiscally unfeasible at the lower densities required by the current
zoning").

      As explained by the Second Circuit, "[t]his issue does not arise in the usual
zoning case, where sponsors of a proposed residence or facility for disabled persons seek a
variance from use restrictions in a residential zone, based upon the asserted need of the
individuals, because of their disabilities, to live in non-traditional settings. . . . It is implicit in
these cases that persons without disabilities have the opportunity to live in the neighborhoods at

issue in, for example, single-family homes that comply with the applicable zoning ordinance. The outcomes of these cases therefore turn upon whether the non-complying features of the proposed residence are 'necessary' in light of the disabilities of proposed residents, and upon whether the accommodation of these differences is 'reasonable.'" Forest City Daly Housing, Inc. v. Town of North Hempstead,  175 F.3d 144, 151 -152 (2d  Cir. 1999).

By contrast, in this case Lockport is not barring the use of the 29 Juniper Street as an Oxford House, but rather only precluding plaintiffs' use of the third floor. While the First Amended Complaint ([24]) alleges that the city's conduct has denied them "an opportunity to participate in a program in the most integrated setting appropriate to their needs" (id., ¶99(d)), absent specific allegations as to how use of the third floor is necessary (as opposed to ideal) to accommodate individuals with handicaps, I conclude that plaintiffs have not sufficiently alleged a reasonable accommodation claim, and I therefore recommend that this claim be dismissed.


## iv.    Retaliation

The FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606  of this title."  42 U.S.C. § 3617. "The ADA . . . include[s] similar prohibitions."  Regional Economic Community Action Program, Inc., 294 F.3d at 54 (citing  42 U.S.C. § 12203(b)). "[T]he McDonnell Douglas burden-shifting rules [apply] to claims of retaliation pursuant to these statutes."  Id.

As noted by plaintiffs, they have asserted a retaliation claim that was not addressed in the city's initial motion. Plaintiffs' Opposition [34], p. 13.  While the city responds that "Plaintiffs have not asserted a . . . retaliation claim" (Lockport's reply memorandum of law [38], p. 4 n. 2), the First Amended Complaint [24] alleges that Lockport "retaliat[ed] against Plaintiffs because of their exercise of their fair housing rights" (id., ¶95(f)). Therefore, I recommend that this aspect of the city's motion be denied.

2.      **37 Vine Street**

Lockport accurately characterizes the allegations relating to 37 Vine Street as being "somewhat ill-defined".  Lockport's Memorandum of Law [26-9], p. 11.  It is unclear whether these allegations are intended to state independent causes of action against the city distinct from the causes of action arising  from the allegations related to 29 Juniper Street, whether these allegations are intended to amplify the causes of action arising from the allegations related to 29 Juniper Street, or whether they are alleged solely  for purposes of the claim asserted against Mr. Hammond.  At oral argument, plaintiffs' counsel added some clarification, stating  "I don't think that the issue of driveway is an issue with the motion to dismiss. The issue with the driveway is either the City was assisting Mr. Hammond or the City wasn't assisting Mr. Hammond".[13]

Covering all the bases, Lockport's motion to dismiss specifically addresses the allegations concerning 37 Vine Street as part of its ripeness and facial insufficiency arguments.

---

[13]      This unofficial transcription is from the digital audio recording of the June 26, 2012 oral argument.

Lockport's Memorandum of Law [26-9], pp. 8, 11-13, 15-16, 26 n.7).  Even if plaintiffs intended the claims against the city relating to 37 Vine Street to piggyback on the FHA claims asserted against Mr. Hammond (First Amended Complaint [24], ¶101), plaintiffs fail to offer any specific arguments as to why the claims arising from the  37 Vine Street allegations should not be dismissed,[14] other than arguing that "[t]he continued harassment of Mr. Johnson and the residents of 37 Vine Street is . . . evidence of a violation of 42 U.S.C. §3617".  Plaintiffs' Opposition [34], p. 25.

Therefore,  I recommend that  the city's motion be denied to the extent it seeks dismissal of plaintiffs' retaliation claims, but that it be granted to the extent it seeks dismissal of plaintiffs' remaining claims (if any) arising from the 37 Vine Street allegations.

## CONCLUSION

For these reasons:

•      I order that plaintiffs' motion to strike ([35]) be granted to the extent it seeks to strike the legal arguments and factual allegations that are not based upon personal knowledge contained in the Rice Declaration  ([26-1]) and to strike the third floor violations attached to the Rice Declaration  ([26-3] - [26-5]) in their entirety, but otherwise be denied; and

•      I recommend that Lockport's motion to dismiss ([26]) be granted to the extent it

---

[14]       Plaintiffs' arguments directed at the facial sufficiency of their intentional discrimination and disparate impact claims  only address their allegations concerning 29 Juniper Street.  Plaintiffs' Opposition [34], pp. 17-20.

seeks to dismiss plaintiffs' disparate impact and reasonable accommodation claims  in their entirety and their intentional discrimination claims against the city arising from the 37 Vine Street allegations, but otherwise be denied.

Unless otherwise ordered by Judge Skretny, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by September 7, 2012 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: August 21, 2012

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge